## CLEAR VISION PUMP CO. v. WICHITA VISIBLE GASOLINE PUMP CO. et al.

(District Court, D. Kansas, Second Division. November 27, 1925.)

No. 279.

**1. Patents ⬅328—Reissue 15,432, for visible gasoline dispensing device, valid and infringed.**

Crouse reissue patent, No. 15,432, for visible gasoline dispensing device, *held* valid and infringed.

**2. Patents ⬅138(2)—Equitable defense of intervening rights held not available in suit for infringement of reissue.**

Where defendants in suit for infringement of reissue patent were shown to have copied plaintiff's structure, to have infringed its original patent, and to have been notified that they were infringing it, *held* equitable defense of intervening rights was not available.

**3. Patents ⬅315—Refusal to permit reopening case for additional proof held not error.**

Refusal to permit defendant in patent infringement suit to reopen case for additional proofs *held* not error, in view of lack of diligence and cumulative character of such additional proof.

In Equity. Patent infringement suit by the Clear Vision Pump Company against the Wichita Visible Gasoline Pump Company and others. On exceptions to report of special master. Exceptions overruled.

The report of the special master was as follows:

"This is a suit for infringement of letters patent. The patent involved is reissue No. 15,432, for a gasoline dispensing device. The structure covered by the patent is intended for use in delivering or supplying gasoline to automobiles. The structure is provided with a glass bowl or container, graduated to indicate gallons, into which the gasoline is delivered either by a pump, hand or electrically operated, or by air pressure. A pipe extends upwardly into the container, its upper end being open and located at a height predetermined, according to the maximum amount of gasoline the container is to hold, say 10 gallons. In other words, the top of the pipe is at the 10-gallon level. When the gasoline reaches this level, the excess overflows into the open end of said pipe, which is, for this reason, called an overflow pipe. This pipe leads downwardly and connects with an underground storage or supply tank, from which the gasoline was originally taken and delivered to the container. After the container is filled, the supply thereto is cut off and a valve opened in the end of a hose in communication with the container, whereby the gasoline, or so much thereof as is desired, is delivered through the hose to the tank of an automobile or other motor vehicle.

"In order to drain the container at night, or when for any reason it may be desired to do so, a valve is opened in a drain pipe, which is in communication with the bottom of the container at one end and with the said overflow pipe at the other end, preferably a short distance below the bottom of the container, whereby all the liquid in the container, as well as all that is above the valve in the drain pipe, is allowed to flow back into the supply tank through the overflow pipe, thus utilizing the latter to perform the double function of returning the overflow and the pump drainage to the supply tank. This structure for returning the drainage to the supply or storage tank through the overflow pipe is the novel feature covered by the patent in suit. The advantage of this element is that it avoids the necessity of extending the drainage pipe the entire distance from the container to the storage tank, or a double pipe system from the container to the storage or supply tank; one line being for the overflow and the other for the drainage.

"The defendants, in their amended answer, filed March 27, 1923, deny that they infringe any rights of plaintiff, deny that the patent sued on is valid, and assert intervening rights preventing plaintiff from having any recovery against defendants. The denial of infringement is in paragraphs 2 and 6 of the amended answer; the denial of validity is in paragraphs 3, 4, 5, and 7 to 11 of the amended answer; intervening rights are asserted in paragraphs 12 and 13 of the amended answer.

"The commercial structure is quite clearly indicated in the blueprint forming a part of plaintiff's answer to defendants' interrogatory No. 4, in which print the overflow pipe is designated *36* and *52*, the drain pipe being designated *41*, and its by-pass valve by the numeral *10*; also in defendants' structure, illustrated in the blueprint forming a part of defendants' answer to plaintiff's interrogatory No. 7. The overflow pipe is marked 'Alum. Overflow Pipe' and a short drain line '½" Galv. Drain Pipe.'

"There is attached to plaintiff's bill a copy of the patent in suit, which has attached to it a drawing of plaintiff's dispensing device. Referring to this drawing and the patent in suit, the glass container is designated by the numeral *6* in Figure 2; the overflow conduit by the numerals *20, 19, 17, 15, 33, 30* and *31*; the fill line or the conduit for supplying the liquid to the container is designat-

ed in the patent by the numerals *10, 12, 22, 23, 24, 25* and *26,* whereby the gasoline is delivered to the chamber *18,* whence it passes upwardly into the container proper. The drain line or conduit extends from the container through the chamber *18,* the pipe *26* of the fill line, the coupling *25,* the pipe *27* (see Fig. 5), the valve *28,* and the pipe *29* to the tee *30,* where it joins the overflow pipe, from which point the overflow and drain lines to the supply or storage tank are common or through pipe *31.*

"As shown in the drawing of the patent, the element *12* of the fill line is a hand-operated pump, though any other suitable power, as an electric pump or air pressure, may obviously be employed. According to the patent drawings, the gasoline is delivered to the automobile from the chamber *18,* below the container, through a pipe *34,* a valve *35,* a pipe *36,* and an elbow *37,* with which a hose would ordinarily be connected, through which the gasoline may pass directly to the tank of the machine or motor car. The claims 1 to 5, inclusive, of the reissue patent only are involved in this suit, as plaintiff does not contend that claim 6 has been infringed.

"The pump manufactured by plaintiff is called the 'Clear Vision,' and that manufactured by the defendants is called the 'Wichita Visible Gasoline Pump.' The evidence in this case is voluminous, especially in reference to the question of priority of invention and anticipation, and presents questions of much embarrassment and which are difficult of determination. There is evidence given by witnesses, speaking of facts and circumstances long past, that appears to be in direct conflict and cannot be harmonized.

"The defendants assert that plaintiff's patent is invalid for lack of novelty and has been anticipated by the prior art. In support of this allegation they plead 20 letters patent, the earliest having been granted in 1876, and the latest in December, 1917. There appear in evidence only the following:

"Raymond Patent No. 1,204,487.

"This is for a service station equipment, but it is of quite a different character from that of the patent in suit. The underground tank *6* has a single line of pipe *12* leading to the glass container *21,* and that single line of pipe has to serve both as a fill line and as a drain line. There is in connection with this Raymond device nothing corresponding to the overflow pipe and to the by-pass valve, by which the contents can be drained from the container into the overflow line. So that

it does not contain the invention in controversy.

"Raymond Patent No. 1,388,893.

"This is another service station device, and in this there are two underground tanks, *8* and *10.* The necessary oil for filling is passed from tank *8* into lower tank *10,* and is forced upward from the fill pipe *11* and through the valve *14* into the bottom of glass container *13.* This device does have an overflow pipe, *18,* and this overflow pipe, instead of leading back to tank *10,* leads back to tank *8,* so that it is connected with a different tank from the fill pipe. There is in this Raymond device no by-pass connection by which the contents of container *13* can be drawn back through the overflow line. All the oil that can pass through the overflow line is the excess oil, which is pumped into the container when it is being filled. This is a different construction from that of the Crouse reissue patent in suit.

"Tokheim Patent No. 640,336.

"This patent is in evidence as Defendants' Exhibit A and Defendants' Exhibits B–2 and C–2. Neither of these structures contains the combination of elements defined by any of the claims of the Crouse reissue patent in suit. This structure does not contain the combination recited in any of the claims of the Crouse reissue patent in suit, because it has no means of draining from the dome or container back to the underground reservoir. It is true that it could be drained by opening cock *K* and allowing the gasoline to fall through the air into the pan and go back to the underground tank in that way; but this would be very objectionable, as gasoline fumes should never be allowed to escape into the air. And Tokheim has no by-pass construction whatever, which by-pass construction contemplates a closed pipe with a valve in it, said closed pipe extending in some way from the container to the overflow pipe, so that by opening the valve in this by-pass pipe the gasoline in the bottom of the container can flow back into the underground tank without being exposed to the air in any way.

"Tokheim Patent No. 903,244.

"This is commonly called the 'Vac System,' and is Plaintiff's Exhibit 13. This system appears to be radically different from that of the patent in suit, as there is no overflow pipe whatever—only the supply pipe— and if you want to drain the contents of the container *10,* it has to be done by opening the cock *11,* which, of course, would throw the

gasoline into the air, as in the Tokheim patent No. 640,366. As there is no overflow pipe, obviously there is no by-pass. This Vac System has no overflow pipe, and consequently can have no drain system back through the overflow pipe. Defendants' Exhibit 27 is evidently the same thing, with the parts somewhat differently shaped.

"Tokheim Dry Cleaner Power Pump.

"The defendants offered in evidence a dry cleaner power pump, so called, and assert that said pump anticipates claims 1 to 5 of the patent in suit. This pump was installed in 1910 by the Tokheim Manufacturing Company at the plant of the Dempsey Cleaning & Dyeing Company, Cedar Rapids, Iowa, and the testimony shows that said dry cleaner power pump was patented by Mr. Tokheim and the patent assigned to the Tokheim Manufacturing Company. The patent itself is not in evidence. The structure is referred to by counsel and witnesses as the 'Tokheim Naphtha Dry-Cleaning System' and the 'Tokheim-Dempsey Pump.'

"Defendants' witness, John J. Tokheim, has testified in this case three times on the subject of this pump, twice in depositions taken at Cedar Rapids, Iowa, on February 28, 1923, and on February 14, 1924, and again in the hearing before the master at Wichita. Depositions were taken on behalf of the defendants in 1923 with reference to this pump, and are in evidence as Defendants' Exhibit 48. Those taken in February, 1924, as Exhibit 49. Defendants' testimony includes also two photographs which are in evidence as Defendants' Exhibits D and 26; D being a part of the depositions taken in 1923, and 26 part of those taken in 1924. This pump has been in continuous use in the Dempsey plant since 1910.

"John Howard McElroy, a well-known patent expert, of Chicago, Ill., was called by plaintiff to testify with reference to the structure of this so-called dry cleaner power pump, as well as upon a number of other patents in evidence, which defendants claim anticipate the patent in suit. After qualifying as a mechanical expert in patent cases, he was asked this question by plaintiff's counsel: 'Have you studied the gasoline dispensing device manufactured and sold by the defendants herein, as disclosed by the blueprint submitted by the defendants in their answer to No. 7 of the interrogatories proposed by complainant, and do you understand the structure and mode of operation of said device? I hand you the blueprint with the set of interrogatories, together with the answers of the defendants thereto.' To which the witness responded: 'Yes, to all branches of the question.' And was thereupon asked the following question: 'Please compare the gasoline dispensing device shown in the Crouse reissue patent in suit as defined in claims 1, 2, 3, 4, and 5 thereof with the gasoline dispensing device referred to in the last question, giving your reasons in full for any opinion you may express.' To which question the witness responded by giving his opinion on the subject-matter inquired into and his reasons therefor as shown on page 21 of volume 1 of the transcript of evidence, and continued to testify with reference to various patents and structures that defendants claim anticipate the patent in suit, as shown by such testimony, continuing from page 21 to the lower part of page 44 of said volume. Whereupon, he was asked the further question by plaintiff's counsel: 'Have you read the testimony relative to and do you understand the structure of the two Tokheim dry cleaning pump system outfits shown in Defendants' Exhibits D and 26? I hand you copies of these exhibits, being my copies, which were furnished by defendants.' To which he replied: 'I read the testimony referred to twice carefully, but I will have to confess I did not understand the structure fully from reading these depositions. Since coming here, however, I have gotten some additional information, so that at the present time I understand the structures as shown in these exhibits,' referring to Exhibits D and 26.

"Upon the conclusion of plaintiff's examination counsel for defendant on cross-examination (page 50) asked Mr. McElroy the following question: 'Mr. McElroy, in the Tokheim dry cleaning plant represented in Defendants' Exhibit 26, I believe you stated you have gained some information outside of or in addition to what is shown by the testimony of record. Did I understand you correctly?' To which the witness replied: 'You did.' 'Q. What is that additional information, and where did you get it? A. Practically all from Mr. Dutton, who used to be connected with the Tokheim Company at that time.' And thereupon defendants' counsel continued his cross-examination, as shown by the transcript, page 51 to the middle of page 57.

"Upon the conclusion of the testimony of Expert McElroy, defendants moved to strike out all of his testimony, for the reason that his evidence was given as opinion evidence of an expert, and was based upon hearsay, irrelevant, and incompetent testimony, and

by reason thereof all his evidence was incompetent. The motion to strike out all the testimony of Witness McElroy was overruled. The expert testimony of Mr. McElroy with reference to the dry cleaner power pump is and should be by the master disregarded, for the reason that as to such device he was disqualified as an expert to testify.

"On the conclusion of the testimony on behalf of plaintiff, defendants' counsel moved for dismissal of the bill of complaint, upon the ground that plaintiff had failed to make out a prima facie cause of action. The motion was denied at the time, but was taken under consideration for final hearing, and the motion is now overruled.

"W. H. Dutton, a witness called on behalf of plaintiff, was connected with the Tokheim Manufacturing Company, of Cedar Rapids, Iowa, from 1901 to 1918, in the capacities at various times during that period as stockholder, secretary, treasurer, president, and finally practically the entire owner. Mr. Dutton produced a blueprint, which is in evidence as Plaintiff's Exhibit 46, showing a rear view of this dry cleaner power pump and describing the structure fully. Mr. Dutton testified in regard to the functions of this dry cleaner pump as follows: 'Q. I will ask you, Mr. Dutton, from your experience as an officer of the Tokheim Manufacturing Company, if the glass domes of these dry-cleaning apparatuses were ever provided with designations to indicate gallons, or any other quantities of liquid? * * * A. The answer is 'No'; they were not. Q. Was there any occasion for graduations on the pumps of these structures? A. None. Q. Were these dry-cleaning apparatuses ever used for dispensing gasoline outside of the building in which they were located, to your knowledge? A. Never. Q. Were they ever advertised or sold as gasoline dispensers, to your knowledge? A. They were not. Q. Would they be suitable for the general dispensing of gasoline to automobiles, the same as the pump of the Clear Vision Pump Company, the plaintiff in this case? A. They would not. Q. Could a structure without a graduated dome, or its equivalent, be successfully used for dispensing gasoline to automobiles? A. It could not. * * *'

"It would appear that this Tokheim dry cleaner power pump or the Dempsey dry-cleaning machine does not anticipate or invalidate or affect the claims of the patent in suit, under the decision of the Court of Appeals of this Circuit in the case of Hollow Brake Beam Co. et al. v. Interchangeable Brake Beam Co., 106 F. 693, at the foot of page 702, 45 C. C. A. 544, 553, wherein it is held in the opinion of the court, delivered by Judge Sanborn as follows: 'A machine or combination which is not designed by its maker, nor actually used nor apparently adapted to perform the function of a patented machine or combination, but which is discovered in a remote art and was used under radically different conditions to perform another function, neither anticipates nor limits the scope of the patent. Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 18, 12 S. Ct. 601, 36 L. Ed. 327; Topliff v. Topliff, 145 U. S. 156, 161, 12 S. Ct. 825, 36 L. Ed. 658; Potts v. Creager, 155 U. S. 597, 608, 15 S. Ct. 194, 39 L. Ed. 275; Westinghouse v. Air-Brake Co. (C. C.) 59 F. 581,590; Walk. Pat. (2d Ed.) p. 54, § 68.'

"Comparison by Plaintiff's Expert of Plaintiff's Patent with Defendants' Blueprint of Device Manufactured and Sold by Defendants.

"Mr. McElroy, plaintiff's expert, was examined on behalf of plaintiff with reference to the blueprint submitted by defendants in answer to interrogatory No. 7, proposed by plaintiff, showing the gasoline device manufactured and sold by defendants, and was asked to compare the gasoline dispensing device shown in the Crouse reissue patent in suit, as defined in claims 1, 2, 3, 4, and 5, with the gasoline dispensing device manufactured and sold by defendants, as disclosed by said blueprint, and was asked to give his reasons in full for any opinion he might express in regard thereto.

"The testimony of Expert McElroy given on behalf of plaintiff with reference to the comparison of the Crouse reissue patent with the gasoline dispensing device manufactured and sold by defendants, as disclosed by the blueprint referred to, analyzes each one of the separate claims and the elements thereof and compares them with the dispensing device of the defendants, as disclosed by the blueprint submitted by defendants, and on page 28 of the transcript says: 'As a result of the foregoing comparison, it will be seen that defendants' structure, as shown in the blueprint inquired about, contains each and every one of the combinations recited in claims 1 to 5, inclusive, in the Crouse patent in suit, since it contains every element recited in each of those claims in the same or an equivalent form, combining and co-operating in the same manner, for the same purposes, and producing the same result.' Mr. McElroy was well qualified to testify on the subject under investigation. He has had

vast experience in patent litigation, making clear to the court and counsel what the blue-prints disclosed to him.

"Mr. Haynes, counsel for the defendants, in his learned and exhaustive printed brief, filed in answer to the brief of plaintiff, asserts on page 13 thereof: 'It has been proven by defendants, and admitted by plaintiff's witnesses, that defendants' apparatus now complained of does not infringe the single claim of the Crouse original patent No. 1,304,028. This is because the greater part of the single claim of the patent is devoted to the construction of a *hollow casting* forming with the overflow pipe an. *annular chamber*. Defendants' apparatus has no such structure, and never did have.' Such is not the understanding of the master of the testimony offered by plaintiff's witnesses. Counsel also asserts that the underlined parts of the claim referred to are not in defendants' apparatus, and that such fact was admitted by witness Crouse.

"The contention is made by the learned counsel for defendants that the structure manufactured and sold by the defendants does not contain a hollow casting, forming, with the overflow pipe, an annular chamber. To reach this conclusion defendants' counsel has to disregard entirely the testimony of plaintiff's expert, McElroy, whose testimony on this subject appears on page 27 of the record: 'Defendants' structure has in the "bottom cylinder case" casting an element that corresponds to this chamber casting of the Crouse device, as it forms the bottom of the container, and it will be noted that the aluminum overflow pipe extends concentrically through this casting, so that it is "a pipe extending through said chamber and extending into and terminating at the upper portion of said container." It will also be noted that the valved discharge pipe as well as the galvanized fill pipe and the ½" galvanized drain pipe, all open into said casting, so that defendants' structure complies with all the limitations of this claim 3.'

"The conclusion reached by Mr. McElroy under the facts shown is supported by an abundance of authorities. The master directs the court's attention to the case of Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935, wherein Mr. Justice Clifford delivered the opinion of the court, quoting from the opinion on page 125 as follows: 'Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining a question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way, to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions, or in a different way, or produce a substantially different result.'

"Again, quoting from the opinion at the foot of page 125: 'Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that, if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. Curtis, Patents (4th Ed.) § 310.'

"Walker on Patents, in his fifth edition, states (article 350): 'No substitution of an equivalent for any ingredient of a combination covered by any claim of at patent can avert a charge of infringement of that claim, whether or not the equivalent is mentioned in the patent. But like substitution of something which is not an equivalent will have that effect. The doctrine of equivalents may be invoked by any patentee, whether he claimed equivalents in his claim, or described any in his specifications, or omitted to do either or both of those things. The patentee, having described his invention and shown its principles, and claimed it in the form which most perfectly embodies it, is, in contemplation of law, deemed to claim every form in which his invention may be copied, unless he manifests an intention to disclaim some of these forms. Combination patents would generally be valueless, in the absence of a right to equivalents, for few combinations now exist, or can hereafter be made, which do not contain at least one element, an efficient substitute for which could readily be suggested by any person skilled in the particular art.'

### "Intervening Rights.

"The defendants assert intervening rights that prevent plaintiff from recovering against defendants. While intervening rights is not a statutory defense, it is an equitable defense, recognized by the patent law where the facts justify it to be asserted. In the opinion of the special master there are three

reasons why this defense is not available to the defendants in this case: First, the record discloses that the defendants copied plaintiff's structure in placing upon the market in competition with plaintiff their dispensing device; second, the defendants' structure, as shown by their blueprint, infringed plaintiff's original patent No. 1,304,028; third, the defendants were notified that they were infringing plaintiff's original patent, No. 1,304,028, as it existed before the reissue application was made.

"From the pleadings, the admissions of the parties, and the evidence in this case, the special master makes and finds the following to be the facts:

## "Findings of Fact.

"I. This is a suit brought by the Clear Vision Pump Company, of Wichita, Kan., a Kansas corporation, as owner of Crouse reissue patent No. 15,432, dated August 22, 1922. The suit is brought against the Wichita Visible Gasoline Pump Company, of Wichita, Kan., a Kansas corporation, Edmund P. Hayes, of Wichita, Kan., and Hayes Equipment Manufacturing Company, the name under which the defendant Edmund P. Hayes does business. No difference in the relative status of the three defendants is asserted by either party, so that they will be considered collectively for all purposes.

"II. Defendants in their answer deny that they have infringed any rights of plaintiff, deny that the patent in suit is valid, and assert intervening rights preventing plaintiff from having any recovery against defendants. There has been no adjudication of any of these issues by any tribunal. Defendants at bar were not parties to the Patent Office proceedings upon the application for the reissue patent in suit, nor to the proceedings upon the application for the original patent 1,304,028.

"III. Defendants' apparatus, complained of by plaintiff as an alleged infringement of the patent in suit, is the so-called Wichita visible pump, illustrated by a blueprint attached to defendants' answers to plaintiff's interrogatories.

"IV. The jurisdiction of this court to try this cause is clear, and has not been denied by defendants.

"V. The patent in suit is alleged by plaintiff to be the invention of one George Emory Crouse, who calls himself Emory Crouse. The patent in suit illustrates and describes a dispensing device of the so-called visible type. The patent in suit was not the first visible gasoline dispensing device, nor

was Crouse the inventor of the first visible gasoline dispensing device. Prior to 1903, John J. Tokheim, of Cedar Rapids, Iowa, then of Tokheim Manufacturing Company, of that city, had devised and put into public use in this country a visible gasoline dispensing device known as the Tokheim hand pump.

"VI. The original patent, No. 1,304,028, upon which the reissue patent in suit is based, had but one claim, while the reissue patent has six claims, No. 5 of which is identical with the single claim of the original patent. Nos. 1 to 5, inclusive, of the reissue patent only are involved in this suit, as plaintiff does not contend that claim 6 has been infringed.

"VII. Plaintiff makes no claim that the piece of pipe or conduit composed of parts *26, 25, 27,* and *29,* and in which is located the drain or by-pass valve *28* of the patent in suit, is in itself patentable. The invention covered by the patent is defined by the claims, and these are for combinations, of which the said valve pipe or conduit is but a single element, and is expressed as 'Valved means establishing communication between the container and the overflow pipe.'

"VIII. Plaintiff propounded interrogatories to defendants under equity rule 58, and defendants, in answer to interrogatory No. 7, submitted a blueprint showing the construction of pump that they had been manufacturing during the period between August 22, 1922, the date of the reissue patent in suit, and September 20, 1922, the date of the filing of the bill in this case.

"IX. The blueprint submitted by defendants, showing the construction of pumps they had manufactured between August 22, 1922, and September 20, 1922, shows a structure which infringes plaintiff's claims 1 to 5, inclusive, of the reissue patent in suit, and, as claim 5 is identical with the single claim of the original patent No. 1,304,028, it infringed the original patent No. 1,304,028.

"X. Defendants were notified by plaintiff's counsel, shortly after the defendants began the manufacture of the infringing device, that they were infringing the original patent No. 1,304,028.

"XI. The defendants, in making their first infringing pump, copied the structure of plaintiff's pump.

"XII. The plaintiff, Emory Crouse, the patentee of the patent in suit, made the invention earlier than the filing of the application for the original patent No. 1,304,028, which was July 29, 1918. He made a crude, but operable, structure, which was installed and in operation as early as the year 1915,

which contained all of the elements of claims 1 and 2 of the reissue patent in suit. This structure was seen by the witness O'Leary on Labor Day, 1916. On October 2, 1916, Crouse made a complete sketch of a structure, showing all the elements of claims 1 and 2 of the reissue patent in suit. This sketch is in evidence as plaintiff's Exhibit 12, and in September, 1917, Crouse had a complete operating double unit machine installed at his garage in Wichita. . This structure contained all the elements of the claims 1 and 2 of the patent in suit, and was shown to a number of plaintiff's witnesses at least as early as the first half of November, 1917. This machine was photographed in December, 1917; such photographs being in evidence as plaintiff's Exhibits 15, 16, 20, and 21. This same machine was exhibited at the Threshermen's Convention, in February, 1918, and later installed at plaintiff's plant in Wichita, where it was used for a considerable time for commercially dispensing gasoline to automobiles. This double unit construction of pump was the same as Plaintiff's Exhibit 49 in evidence, except that Exhibit 49 is made smaller for convenience of handling. Plaintiff also had a single unit pump of the same construction at the Threshermen's Convention in February, 1918, which was later sold and used in Wichita for commercially dispensing gasoline to automobiles.

"XIII. Plaintiff took proofs attempting to establish date of invention prior to July 29, 1918, the date of filing the application for the original patent 1,304,028. The proofs show that Crouse pumps, prior to March, 1918, had a so-called vertical, adjustable overflow device, as well as a by-pass drainage connection with the overflow.

"XIV. In their attempt to prove the invalidity of the patent in suit, defendants have called attention to bathtubs and wash basins, and have presented a Tokheim patent, numbered 640,336, and a pump made according to said patent, and have called attention in depositions to a Raymond pump, made in Adrian, Mich., a Vac System produced in Cedar Rapids, Iowa, and a naphtha dry-cleaning plant installed at Cedar Rapids. The construction of bathtubs and wash basins, to which defendants have referred, does not contain the invention of the patent in suit. The Tokheim patent does not show the by-pass valve structure of the patent in suit for draining the container through the overflow line.

"XV. The evidence with reference to the Raymond patent does not with certainty establish a date of construction or sale for such pump earlier than June, 1918, and therefore too late to anticipate the patent in suit, in view of the evidence of the early invention on the part of Emory Crouse, as heretofore found.

"XVI. The Vac System is for a construction distinct from that of the patent in suit, and therefore does not anticipate the latter.

"XVII. The naphtha dry-cleaning structure, being the Tokheim dry cleaner power pump, so called, does not disclose the structure of the patent in suit, was not intended for use in dispensing gasoline to automobiles, never was used for such purpose, and, according to the evidence, could not be so used, and hence this structure does not anticipate the patent in suit.

"XVIII. In their answer to the bill the defendants pleaded a patent to McKellar, No. 1,305,139, dated May 27, 1919, after the date (May 20, 1919) of the Crouse original patent, upon which the reissue patent in suit is based; but the application for the McKellar patent was filed November 26, 1917, or earlier than the application for the Crouse original patent, No. 1,304,028. This McKellar patent was pleaded in the defendants' answer, with 19 other patents, as an anticipation of the reissue patent in suit. Hence, under the law as defined by the Supreme Court in Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68, the filing date of the application for the McKellar patent cannot be considered to anticipate the patent in suit, or as proof of prior invention, and the McKellar file wrapper, in view of plaintiff's objections, cannot be accepted to prove said filing date.

"XIX. However, if the McKellar patent be accepted to prove the filing date of the application therefor, as against the plaintiff, as contended for by the defendants, plaintiff's proofs establish a date for completion of the invention of the patent in suit by Emory Crouse earlier than November 26, 1917, the filing date of the McKellar application.

"XX. Defendants, after the date of the original patent, 1,304,028 (May 20, 1919), and prior to the date of the filing of the application for the reissue patent in suit, engaged in the manufacture and sale of the apparatus now complained of.

"XXI. After the granting of the said original patent, No. 1,304,028 (May 20, 1919), and prior to the date of the filing of the application for the reissue patent in suit (February 8, 1921), the defendants began the manufacture of a pump substantially as shown by the blueprint attached to defendants' answers to the interrogatories pro-

pounded by plaintiff. Defendants completed the first pump at or about the month of September, 1920. Defendants began, at or about July, 1920, to build a factory and to install the necessary machinery on East Gilbert street in the city of Wichita, Sedgwick county, Kan., for the purpose of manufacturing and selling to the public generally the said dispensing device or gasoline pump here complained of. Defendants' business had grown until, at the time of the filing of the application for the reissue patent, February 8, 1921, defendants had a factory capacity to make complete and sell about three pumps per day. At said time defendants had about ten salesmen on the road, selling their output of pumps, and defendants' territory was, and they were actually selling pumps in, the states of Kansas, Oklahoma, and Illinois, and defendants had, prior to February 8, 1921, taken orders for a substantial number of pumps, and had manufactured and shipped a substantial number of said pumps. Emory Crouse and the plaintiff had knowledge of the defendants engaging in the manufacture and sale of the pumps manufactured by the defendants, and here complained of, and Crouse and said plaintiff were familiar in a general way with the progress of defendants in the manufacture of their pumps and in the expansion of their trade and territory, and the said Emory Crouse, and said plaintiff, had such knowledge prior to the time of the filing of the application for the reissue patent.

"XXII. Plaintiff has title to the patent in suit sufficient to permit plaintiff to prosecute the case at bar.

"XXIII. The patent in suit is what the courts have called a 'broadened' reissue; that is, a reissue having claims of a broader scope than the claims of the original patent.

"Conclusions of Law.

"I conclude as a matter of law: ·

"I. That the court has jurisdiction of the parties to this suit, and of the subject-matter thereof.

"II. That the plaintiff has title in the reissue patent, No. 15,432, sufficient for the purposes of this suit.

"III. That the patent in suit is good and valid as to all the claims involved, to wit, 1 to 5, both inclusive.

"IV. That the defendants have infringed all the claims of the reissue patent, to wit, claims 1 to 5, both inclusive, and that the pump, as constructed and manufactured and sold by the defendants, infringes the original patent of plaintiff, as well as all the claims 1 to 5, both inclusive, of the reissue patent of plaintiff.

"V. That the plaintiff is entitled to a decree, interlocutory in character, enjoining defendants, the Wichita Visible Gasoline Pump Company, a corporation, Edmund P. Hayes, and the Hayes Equipment Manufacturing Company, their agents, servants, and employés, from further infringing said reissue patent No. 15,432, and each and all of its claims 1 to 5, both inclusive, and directing a master to ascertain and report the amount of defendants' profits and plaintiff's damages since August 22, 1922.

"VI. That plaintiff is entitled to its costs, to be taxed against the defendants."

On the 17th day of October, 1924, counsel for the respective parties appeared before the special master in the judge's chambers in the federal courtroom in Topeka, at which time the defendants presented to the special master their motion for leave to offer in evidence, on behalf of the defendants, pumps and photographs showing the structure illustrated and claimed in Crouse patent No. 1,304,028, and pumps manufactured by the defendants, and alleged by plaintiff to have been copied from plaintiff's patented pumps, and photographs of defendants' pumps, and also that witnesses might be called to identify and explain said pumps and photographs.

The motion was duly argued by counsel for the respective parties, and after such argument and consideration thereof was by the special master denied; the special master being of the opinion that there was lack of diligence shown in offering this new testimony, and that the proposed testimony was simply cumulative to what had already been offered.

Noble, Ayres, Black, & McCorkle, of Wichita, Kan., and A. J. O'Brien, of Denver, Colo., for plaintiff.

Amidon, Hart & Porter, of Wichita, Kan., and Delos G. Haynes, of St. Louis, Mo., for defendants.

POLLOCK, District Judge. This is a suit for infringement of reissued letters patent No. 15,432, original patent No. 1,304,028, and for an accounting with defendants. By way of answer defendants first denied the patent of plaintiff to be valid; second, denied infringement of the rights guaranteed to plaintiff by the patent; third, asserted intervening rights.

On issues joined the case was referred to an able special master, who took the proofs, heard oral arguments, and, having consid-

ered fully the matter, filed an exhaustive report of the facts as established by the proofs, conclusions drawn therefrom, and a recommendation that a decree enter, upholding the validity of the letters patent claimed by plaintiff, finding the defendants guilty of infringement, denying the intervening rights claimed by defendants, recommending an injunctive decree issue restraining the use by defendants of the infringing device employed by it, and ordering an accounting be taken of the profits made by defendants from the use of the infringing device. To this report defendants have taken and filed many exceptions.

[1-3] I have examined the entire record, and have arrived at the conclusion, as did the special master, the interest of the plaintiff in the letters patent in suit is ample to entitle it to maintain this suit. Said letters patent are valid. The device used by defendants at the date this suit was instituted does infringe upon the exclusive rights guaranteed to plaintiff by claim 1 of the original and claims 1 to 5 of the reissued patent, and under the proofs of this case the defendants are not entitled to escape liability through any claim of intervening rights set up in the answer. The application to reopen the case for additional proofs must, for the reasons stated by the master, be overruled and denied, and the decree recommended by the able special master, for the reasons given by him in his report, enter in the cause.

The exceptions are therefore overruled and denied. It is so ordered.